## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-642

KINDRED HOSPITALS WEST, L.L.C., d/b/a
KINDRED HOSPITAL-DENVER,

      Plaintiff,

v.

JBS USA FOOD COMPANY HOLDINGS and
JBS USA FOOD COMPANY HOLDINGS EMPLOYEE
GROUP HEALTH PLAN,

      Defendants.

---

### COMPLAINT FOR BENEFITS UNDER ERISA (29 U.S.C. § 1132)

---

Plaintiff Kindred Hospitals West, L.L.C. d/b/a Kindred Hospital – Denver ("Kindred"),

for its complaint, complains and alleges as follows:

### JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under the laws of the United States, 29 U.S.C. §

1331 (federal question), as a civil action encompassing violations of the Employees Retirement

Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132.

2.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and 29 U.S.C. §

1132(e)(2), in that a substantial portion of the events or omissions giving rise to Kindred

Hospital's claims occurred in this district.

### THE PARTIES

3.      Kindred is a limited liability company organized and existing under the laws of

the State of Delaware with its principal place of business in Louisville, Kentucky.  Kindred owns

1

and operates a long term acute care hospital located in Denver County, Colorado, which provides

care and treatment to the sickest of the sick – patients who require intensive treatment for an

extended period of time that a short term acute care hospital is not equipped to provide.

4.      Upon information and belief, defendant JBS USA Food Company Holdings

Employee Group Health Plan (the "Plan") is an employee group health benefit plan organized

and existing under the provisions of the Employees Retirement Income Security Act of 1974, as

amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

5.      Upon information and belief, defendant JBS USA Food Company Holdings

("JBS") is the Plan Sponsor and Plan Administrator and, as such, is a fiduciary of the Plan within

the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21).  JBS has its principal place of

business at the company headquarters located at 1770 Promontory Circle, Greeley, Colorado

80634.

6.      The Plan and JBS shall be referred to collectively as the "Plan Defendants."

## FACTUAL BACKGROUND

7.      Between December 31, 2019, and August 28, 2020, the patient at issue here

(whose name will not be used to protect the patient's privacy and who will hereinafter be

referred to as the "Patient"), was a patient at Kindred.  For the entirety of that time, the Patient

had medical coverage through and thus was a beneficiary of the Plan.

8.      Prior to admitting the Patient, Kindred contacted AmeriBen, which on

information and belief is the Plan Defendants' claim administrator and agent and at all times

pertinent hereto was acting on behalf of the Plan, to verify the Patient's coverage under the Plan

and determine certification requirements, if any, for the Patient's admission.

2

9.      AmeriBen confirmed the Patient was eligible for coverage as a covered spouse

under the Plan, and that the Patient's coverage had been in effect since November 1, 2017.

Kindred was also advised that it was an in-network provider pursuant to its contract with

Anthem, and Kindred thus understood, consistent with custom and practice in the healthcare

industry, that it would receive direct payment at the Anthem contract rate.  The Plan, through

AmeriBen, also certified admission to and treatment of the Patient at Kindred Hospital as

medically necessary.  In reliance on the Plan Defendants' representations, Kindred admitted the

Patient into its hospital and provided him with care and treatment.

10.     Kindred was in regular contact with the Plan Defendants, through AmeriBen,

thereafter regarding the Patient's care and treatment, including seeking continued certification to

treat the Patient as well as submitting its claims for payment to Anthem, as directed by

AmeriBen, on an ongoing basis.

11.     Kindred submitted at least 17 interim claims to the Plan through its agent Anthem

during the Patient's admission for payment of the services rendered to the Patient.  Each time

Kindred did so, it checked the assignment of benefits box by indicating "Y" in box 53 on its

claim forms submitted to Anthem for reimbursement, which indicated Kindred was proceeding

in its capacity as an assignee of the Patient and his medical benefits.

12.     Anthem processed the claims and paid Kindred directly for its services provided

to the Patient through June 28, 2020.  Anthem denied payment of Kindred's claims for the care

and treatment provided to the Patient between June 29 and August 28, 2020, on the alleged

grounds that the care was not medically necessary.  AmeriBen's nurse case manager separately

advised Kindred of the Plan Defendants' position that the care being provided to the Patient was

custodial, which she said was not covered under the Plan.

13.     Kindred proceeded through the administrative claim process and submitted two

detailed clinical appeals to AmeriBen as the Patient's assignee disputing the Plan Defendants'

decision to deny any payment for services provided beginning on June 29.  In connection with

these appeals, Kindred submitted its assignment of benefits and also provided substantial

medical evidence showing that the daily doctor visits and intensive skilled nursing services being

provided by Kindred were medically necessary and could not have been provided at a lower

level of care.  Kindred further explained that due to the Patient's need for frequent suctioning

and recurrent desaturation, he was clinically denied admission to multiple lower level of care

facilities, which could not provide the intensity of services he required.

14.     Nonetheless, Kindred's appeals were denied on the alleged basis that the long

term acute care hospital services being provided to the Patient were not medically necessary. In

making this assertion, the Plan Defendants thus impliedly contended that the Patient's care could

be provided at some hypothetical lower level of care, even though, as the Plan Defendants well

knew, no actual lower level facility had agreed to accept him.

15.     Kindred followed up both with Anthem, which by then had acquired AmeriBen,

and the Plan on numerous occasions thereafter through its counsel, disputing the Plan's

contention that Kindred's services were not medically necessary.  However, the Plan Defendants

did not change their position, merely stating that administrative remedies had been exhausted and

that counsel's client (*i.e.,* Kindred) had the right to bring a civil action under Section 502(a) of

ERISA.

16.     Based on the foregoing facts, communications and interactions between the

parties over a two-year period, the Plan Defendants were aware that Kindred was at all times

acting as the Patient's assignee throughout the claim submission and review and appeal process.

4

17.     The Patient was a 52-year-old man who was hospitalized after being involved in a

motor vehicle accident which caused multi-system trauma, including severe traumatic brain

injury and acute hypoxic respiratory failure.

18.     The Patient was medically complex and required long-term acute hospital care at

Kindred, including daily physician oversight and intervention.  While at Kindred, and

specifically during the denied period, the Patient's complexity of care and near daily changes to

his treatment plan could in no way have been provided at a lower level of care facility.

19.     Among other things, the Patient was trach dependent and required frequent

suctioning.  He also required hemodialysis at least three times a week and had noted

hyperkalemia. He had tachycardia and pneumonia, and was provided with numerous IV

antibiotics, yet his oxygen needs increased.

20.     The Patient was in fact required to be emergently air lifted to a short term acute

care hospital, a higher level of care, on August 28, 2020, for further evaluation and treatment.

The fact that the Patient's condition worsened while receiving acute hospital care means that he

was in no way stable for discharge at the time the Plan Defendants determined to cut off his

coverage on the alleged grounds it was not medically necessary.

## CLAIM FOR BENEFITS UNDER ERISA, 29 U.S.C. § 1132

21.     Kindred Hospital repeats and realleges the allegations contained in paragraphs 1

through 20, inclusive, and incorporates the same as though set forth in full.

22.     Pursuant to an assignment of benefits executed on behalf of the Patient, who was

a beneficiary under the Plan pursuant to 29 U.S.C. § 1132(a)(1), Kindred may also be considered

a beneficiary under the Plan for purposes of this claim for ERISA benefits against the Plan

Defendants.

5

23.     Accordingly, Kindred is empowered to bring a civil action against the Plan

Defendants pursuant to 29 U.S.C. § 1132(a)(1)(B), to recover benefits due to it under the terms

of the Plan and to otherwise enforce its rights under the Plan.

24.     Under the Plan, benefits are paid for medically necessary care and treatment,

which is defined as care and treatment recommended or approved by a physician; is consistent

with the patient's condition or accepted standards of good medical practice; is medically proven

to be effective treatment of the condition; is not performed mainly for convenience of the patient

or provider; is not conducted for research purposes; and is the most appropriate level of services

which can be safely provided to the patient.

25.     The care provided to the Patient by Kindred clearly met this definition. The

Patient was unstable and had medically complex conditions that required treatment that would

not and could not have been provided at a lower level facility.  Instead, the Patient required

frequent and multi-faceted services and treatments that could only be provided in an acute

hospital like Kindred.

26.     Moreover, Kindred cannot discharge a patient without a physician discharge order

and a safe discharge option.  Until then, discharge screens are not met under any criteria used to

evaluate medical necessary and continuing stay criteria are met for that reason alone.  Kindred

had neither a physician discharge order nor a safe discharge option until the Patient was

discharged to a higher level of care. No lower level facility or outpatient dialysis center would

accept the Patient because of his intensive clinical needs.

27.     As for the Plan Defendants' contention that the care was custodial, this makes no

sense and is violative of law, which is likely why that contention did not form the basis for the

written denials of Kindred's appeals.  Custodial care is care to assist with the activities of daily

living, like eating and bathing, that can be performed by non-skilled persons.  The Patient clearly needed skilled care and would have died without it.

28.     The Plan Defendants failed to discharge their duties under ERISA, in that, among other things, they failed to have a reasoned basis for their decisions and construed provisions of the Plan regarding medical necessity and custodial care in a manner that conflicted with the Plan's plain language.

29.     In addition to refusing to pay for medically necessary care in contravention of the terms of the Plan, the Plan Defendants failed to discharge other duties under ERISA. Among other things, they failed to have unbiased physicians review the pertinent medical records before making the erroneous determinations, purported to have an obstetrician (*i.e.,* someone with no expertise in this male Patient's conditions) review medical necessity, failed to provide a full and fair review, failed to have a reasoned basis for their decision to deny coverage, failed to consider the lack of a safe discharge option in conjunction with the guidelines they purported to review, and otherwise failed to fairly adjudicate benefits in violation of the terms of ERISA.

30.     In fact, given the overwhelming medical necessity of the care provided to the Patient by Kindred, it seems clear that the true basis for the Plan Defendants' denial was because it believed the Patient would never improve and grew tired of paying for his care.  Such a position is prohibited by the Patient Protection and Affordable Care Act ("PPACA"), which is specifically made applicable to ERISA plans.

31.     PPACA includes hospitalization as an "essential health benefit" and prohibits coverage denials against the wishes of the patients (or person acting on their behalf) made on the basis of the "expected length of life or of the individuals' present or predicted disability, degree

7

of medical dependency, or quality of life." Similarly, PPACA prohibits coverage decisions that discriminate based on these same factors. *See* 42 U.S.C. § 18022 (1)(C), 4(B) and 4(D).

32.     The Defendants wrongly denied benefits under the Plan and committed numerous other procedural violations and also violated PPACA.  As such, Kindred is entitled to $193,933 for dates of service June 29, 2020, through August 28, 2020, along with interest on the unpaid benefits and reasonable attorneys' fees and costs for the amounts it has been forced to expend to address the Plan Defendants' wrongful denial of benefits.

WHEREFORE, Kindred prays for judgment as follows:

1.     Against the Plan Defendants, jointly and severally, for benefits under the Plan in an amount exceeding $193,933;

2.     For pre-judgment and post-judgment interest on the above amounts at the maximum legal rate;

3.      For reasonable attorney's fees and costs of suit incurred in connection with this action; and

4.     For such other and further relief as the Court may deem just and proper.


DATED:  March 13, 2023                    Respectfully submitted,


/s/ Jennifer Metzger Stinnett
Jennifer Metzger Stinnett
FULTZ MADDOX DICKENS PLC
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202
Tel:   (502) 588-2000
Fax:  (502) 588-2020
jstinnett@fmdlegal.com
Counsel for Plaintiff, Kindred Hospitals
West, L.L.C. d/b/a Kindred Hospital - Denver